## APPEAL OF D. R. McINTIRE.

FROM THE DECREE OF THE COURT OF COMMON PLEAS No. 2
OF ALLEGHENY COUNTY.

Argued November 10, 1887—Decided January 3, 1888.

1. In partnership articles between Nellis, Shriver and Stokes, Nellis, the party of the first part, guaranteed to Shriver, the party of the second part, twenty per cent. profits on his capital stock annually. Afterwards, in articles of dissolution and settlement of litigation instituted, McIntire became bound to make Shriver whole upon his capital stock according to the terms of the articles of copartnership: *Held*, that though the guaranty of the 20 per cent. profits was incorporated into the articles, it was but the individual guaranty of Nellis, and was not one of the terms of the copartnership agreement within the indemnifying engagement of McIntire.
2. In the absence of an express contract, and of facts and circumstances from which an agreement to pay may be fairly inferred, liquidating partners are not entitled to compensation for their services.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 76 October Term 1887, Sup. Ct.; court below, No. 362 April Term 1884, C. P. No. 2 in equity.

The proceeding in the court below was by bill in equity filed on March 13, 1884, by S. P. Shriver against David R. McIntire, A. J. Nellis, A. J. Nellis, executor of Eliza M. Nellis, deceased, impleaded with James H. Stokes, not served.

On November 4, 1878, "Aaron J. Nellis of the first part, Samuel P. Shriver of the second part, and James H. Stokes of the third part, all of Allegheny City, Pa.," entered into articles of copartnership, under the name of Nellis, Shriver & Co., for the purpose of carrying on the manufacture of certain agricultural implements. Nellis contributed the stock, tools and machinery he had on hand, buildings, grounds, etc., with the rights to manufacture implements under various patents owned and controlled by him, forming a basis of his capital stock, aggregating $80,000. The articles contained the provisions which follow:

The party of the second part shall put in as his share of the capital stock $20,000, in the manner and form hereinafter stipulated, viz., $10,000 in cash and $10,000 as soon as the requirements of the business may demand it, and until such payment is made by the party of the second part, he shall be chargeable with interest on the same.

The party of the third part is to have a one tenth part of the net profits of the business, for which interest on $10,000 at the rate of six per cent. per annum is to be deducted from his portion of the profits, and the remainder to be considered as his capital stock, until the amount of $10,000 is so accumulated, when his interest in the business shall be considered as that much capital.

As a guarantee by the party of the first part to the party of the second part, on account of his not being familiar with the business, and as an inducement by the party of the first part, he guarantees that the profits of the business shall be made to the party of the second part equal to twenty per cent. per annum on his capital of $20,000.

On September 25, 1879, the interest of A. J. Nellis in the copartnership was sold at sheriff's sale and bought in by S. P. Shriver, who in October following transferred it to Mrs. Eliza M. Nellis, wife of A. J. Nellis, subject to his own rights under the articles of association. The business was then continued, in the direction of liquidation, under the management of Shriver and Stokes, with Nellis assisting and acting under a power of attorney as the agent of his wife, until February 10, 1882. In the meantime, certain creditors, alleging that the said sale of Nellis's interest was fraudulent, issued execution and had it re-sold at sheriff's sale.

By articles, dated February 10, 1882, "between David R. McIntire, [assignee of Mrs. A. J. Nellis] A. J. Nellis and Eliza M. Nellis, of the one part, and Samuel P. Shriver and James H. Stokes, liquidating partners of Nellis, Shriver & Co., of the other part," the firm was dissolved; Shriver and Stokes were to continue as liquidating partners and take charge of the cash on hand, bills payable, book accounts, and other uncollected claims, and collect the same, pay off the liabilities "and settle with McIntire for the Nellis six tenths interest in

said firm, etc., on the terms provided in the articles of agreement, as though there had never been any sheriff's sale and McIntire were A. J. Nellis." The stock on hand, as per inventory taken, amounting to $26,000, was to be taken by McIntire and receipted for by him as a payment of that amount on the six tenths interest which was of Nellis and was to be charged to that interest. After other immaterial provisions, these articles of dissolution continued:

And whereas, a bill in equity has been filed in the Court of Common Pleas No. 1 of Allegheny county, at No. 544 December Term 1881, by the receivers of The Crawford Manufacturing Company, to recover the interest which was of said A. J. Nellis in said firm, against said Shriver & Stokes, and cross bill, etc., filed, and the cause is now pending for trial; now, therefore, the said McIntire agrees to give to said Shriver & Stokes an obligation with sufficient surety, conditioned that he will cause the proper defence to be made to said action, and that he will pay any decree or judgment that may be recovered against said Shriver & Stokes, for or on account of said interest, and shall indemnify and save them harmless from any and all loss, liability, damages and costs, on or account of or by reason of said action, and also that McIntire shall pay to Shriver any amount of money, if any, which may be necessary upon final settlement of the affairs of Nellis, Shriver & Co., to make said Shriver whole upon his capital of $10,000, and profits according to the terms of the articles of copartnership; and to Stokes, whatever amount of money, if any, to give Stokes the amount which upon final settlement may be due him.

In pursuance of the foregoing, Shriver & Stokes turned over to McIntire the $26,000 stock of goods with possession of the premises, and entered upon their duties collecting the outstanding claims and paying the debts of Nellis, Shriver & Co., until about June 1, 1883, when they claimed to have collected all the available assets and to have paid the debts of the firm, except a balance due the Siemens-Anderson Steel Co., of $157.50, which had been attached.

*Mr. L. P. Stone*, who had been appointed examiner and master, having found the foregoing facts, proceeded to pass upon the matters of contention, among which, material to the question decided in this court, was—

3. As to the amount of profits S. P. Shriver is entitled to, whether to three tenths of the profits realized by the firm, or to 20 per cent. per annum on $20,000, or 20 per cent. per annum on $10,000, the amount he actually paid into the firm; or, finally, 20 per cent. on $10,000 per annum, less 6 per cent. on $10,000 during the continuance of the partnership.

After quoting the guaranty clause in the articles of association, the master proceeded:

Now there is no controversy as to the meaning of all this in relation to Shriver's profits; indeed, there could hardly be any. It looks like a very liberal offer. The person who made it best knows why, and on what faith he made it. Certainly the results of the business did not justify it. The suggestion might be made, and probably was by counsel, that it is unjust, not equitable, that one partner should receive nearly all the profits; and, again, that the language employed contemplates the paying in the second $10,000, which was not done—the provision he shall put in $20,000—which he never did. But read a little further, and we find he was to pay it in when the requirements of the business demanded it, and till that time he was to pay interest on this $10,000. He must be ready to put in the second $10,000 when required, but have the use of it in the meantime, by paying to the firm interest. In this light he was actually a borrower of the firm. The interest seems to stand in place of the $10,000, and if the business did not require the paying it in, he would certainly not be required to pay it in at all; but there is no qualification or limitation to the guarantee. After all the preceding provisions respecting the money, and the division of profits, Nellis guarantees 20 per cent. to Shriver on his $20,000 per annum.

Nellis was familiar with the business, was confident and sanguine of success, with his valuable patents mentioned, machinery, facilities, etc.; with a well-established trade, no doubt all that was needed was the money to put things in motion; and ten thousand dollars would do this, and then with ten thousand dollars more, yielding interest to the firm, to be paid in should they find it necessary, would guarantee such success that Nellis thought he could afford to make the guarantee he did, and thus secure the money. Such, no doubt, was the

view and the reasoning of Mr. Nellis, which led to the offer. In this view of the matter there can be but one defence to the claim of Shriver, and that is that the requirements of the business demanded the paying in of the second $10,000, and Shriver failed to put it in according to his agreement. . . . . .

In consideration of all these questions and all the evidence touching it, the master is of the opinion and so finds: That no demand was ever made on Shriver to pay in the additional or second $10,000 spoken of in the article of agreement; and, further, that the requirements of the business did not demand it; that paying interest on that amount is a compliance on his part with the article of copartnership relative to it; and the guarantee clause is binding as against McIntire, because he stands in the place of Nellis, and has bound himself in the article of February 10th, the article of dissolution, to pay to Shriver his ten thousand dollars and such profits as he is entitled to under the article of copartnership, which is equal to twenty per cent. per annum on $20,000, less six per cent. on $10,000 for three years and three months. . . . . .

Having thus passed upon and disposed of the facts involved in the case, the accounts will be stated accordingly:

James H. Stokes has no stock account or account as partner. He never acquired such interest under the article of association, and the one tenth interest mentioned as his will be treated in stating the accounts as belonging to the Nellis interest, making that interest seven instead of six tenths.

The stock account of A. J. Nellis was transferred to S. P. Shriver, and from him to an impersonal account, styled The Nellis interest, and which is the interest of D. R. McIntire, as developed in this proceeding.

It is agreed that the profits of the firm of Nellis, Shriver & Co., as shown by the books of the firm, is correctly stated at $14,448.89.

The itemized statement in debtor form shows that Shriver & Stokes, as liquidating partners, collected the sum of $37,154.20, and they claim credit by an itemized statement of all money by them paid out in the sum of $23,782.53, showing a balance in the hands of S. P. Shriver of $13,371.67. All debts of the firm being paid, this balance is to be accounted for and distributed in settlement, and statement of accounts

between the parties, according to the articles of copartnership, and the findings of the master. . . . . .

The master reported the following:

## STATEMENT OF ACCOUNTS.

### THE NELLIS INTEREST ACCOUNT.

*Dr.*

| | | |
|---|---|---|
| To amount of stock turned over to D. R. McIntire | $26,000 | 00 |
| " Cash for the Nellis note . . . . . | 5,500 | 00 |
| " Guarantee on 20 per cent. profits . . | 8,653 | 33 |
| | $40,153 | 33 |

*Cr.*

| | | | | | | |
|---|---|---|---|---|---|---|
| By Stock . . . . . | | | $21,680 | 55 | | |
| " Profit and Loss (gain) . . | | | 10,142 | 22 | | |
| " Book debts collected and surcharges . . | $340 | 60 | | | | |
| Less Seimens-Anderson Co. | 157 | 54 | 183 | 06 | 32,005 | 83 |
| Balance due by the Nellis interest . . . | | | | | 8,147 | 50 |

### S. P. SHRIVER.

*Dr.*

| | | |
|---|---|---|
| To cash per liquidation account . . . | $13,371 | 67 |
| " Collections since liquidation account . . | 135 | 60 |
| " Willey & Knold, omitted in liquidation account | 26 | 27 |
| " Amounts surcharged per master's report . | 205 | 00 |
| " Interest on $10,000 capital . . . . | 1,950 | 00 |
| | $15,688 | 54 |

*Cr.*

| | | | | |
|---|---|---|---|---|
| By Cash Capital . . . . | $10,000 | 00 | | |
| " Expenses . . . . | 678 | 50 | | |
| " Profit and Loss . . . . | 4,346 | 67 | | |
| " Guarantee from the Nellis interest | 8,653 | 33 | | |
| " Seimens-Anderson & Co. . . | 157 | 54 | 23,836 | 04 |
| Balance due S. P. Shriver . . . . | | | $8,147 | 50 |

The master therefore recommended a decree, inter alia, that D. R. McIntire pay to S. P. Shriver the sum of $8,147.50, with interest from February 11, 1884, and that one half the costs including the master's fee be paid by S. P. Shriver and the other half by D. R. McIntire.

Exceptions filed to this report were overruled by the master, and being renewed, they were all dismissed by the court, EWING, P. J., except one to the allowance by the master of $1,000 to Mr. Shriver and $602.17 to Mr. Stokes, for compensation as liquidating trustees, which exception, on the authority of Beatty v. Wray, 19 Pa. 516; Brown v. McFarland, 41 Pa. 133, was sustained.*

The disallowance of these claims for compensation added the sum of $1,602.17 to the profits of the business. The court then made a final decree that D. R. McIntire pay to S. P. Shriver the sum of $6,545.33, with interest from February 12, 1884, and that each of the parties named pay one half the costs, to include the master's fee. Thereupon D. R. McIntire took this appeal, assigning said decree as error.

*Mr. Thomas M. Marshall (Mr. A. M. Imbrie* with him), for the appellant:

1. By the articles of copartnership, the stock of Shriver was first, cash $10,000, and second, $10,000, "as soon as the requirements of the business may demand it." Moreover, by the terms of the articles, Shriver was the finance minister of the firm. He was to judge when, if ever, he should pay in another dollar to the firm. The covenant of McIntire was "to make said Shriver whole upon his capital of $10,000

---

* Upon an appeal by S. P. Shriver to No. 176 October Term 1886, assigning this disallowance as error, the court held:

OPINION, MR. JUSTICE STERRETT:

The sole question in this case is, whether appellant and his partner, Stokes, are entitled to compensation for their services as liquidating partners of Nellis, Shriver & Co.

There is no evidence of any express contract on the subject, nor are there any facts or circumstances from which an agreement to pay for such services can fairly be inferred. The court was therefore right in adhering to the well settled rule that compensation in such cases cannot be allowed unless previously contracted for.

Decree affirmed and appeal dismissed at the costs of appellant.

and profits, according to the terms of the article of copartnership."

The clause guaranteeing to Shriver a profit of 20 per cent. per annum on his capital of $20,000, was but the personal contract of A. J. Nellis, "the party of the first part." The partnership had no interest in it.

*Mr. Kirk Q. Bigham*, for the appellee:

There cannot be one rule of liability as to Nellis upon the contract of partnership, and another as to McIntire upon the contract of liquidation. The single exception upon the subject raised the question only upon the original agreement.

OPINION, MR. JUSTICE STERRETT:

The main contention in this case is, that the court below erred in construing the agreement of February 10, 1882, and charging appellant with $8,653.33, the difference between Shriver's share of profits actually earned and the nominal profits, of twenty per cent. per annum, claimed by him under the Nellis guaranty. That guaranty, embodied in the tripartite agreement of November 4, 1878, between Nellis of the first, Shriver of the second and Stokes of the third part, is as follows: "As a guarantee by the party of the first part to the party of the second part, on account of his not being familiar with the business, and as an inducement by the party of the first part, he guarantees that the profits of the business shall be made to the party of the second part equal to twenty (20) per cent. per annum on his capital of $20,000."

It is claimed by Shriver that this personal obligation of Nellis was assumed by appellant in that clause of the agreement of February 10, 1882, wherein the latter undertakes to indemnify Shriver and Stokes "from any and all loss, liability, damages and costs on account of or by reason of a certain action then pending, and also pay to Shriver any amount of money, if any, which may be necessary upon final settlement of the affairs of Nellis, Shriver & Co., to make said Shriver whole upon his capital of $10,000, and profits according to the terms of the articles of copartnership; and to Stokes, whatever amount of money, if any, is necessary to give Stokes the amount which upon such final settlement may be due him." The court

appears to have regarded this as an undertaking on the part of appellant to make Shriver whole not only as to his $10,000 capital invested in the business, and his full share of the profits actually earned according to the articles of copartnership, but also to make him whole as to the nominal profits of 20 per cent. per annum on $20,000, according to the personal guaranty of Nellis; and he was accordingly charged with the difference of $8,653.33, above mentioned.

We cannot regard this as the correct construction of the contract in question. The items specified therein are Shriver's "capital of $10,000, and profits according to the terms of the articles of copartnership." Referring to those articles, we find Shriver's paid in capital is $10,000, about which there is no dispute, and we further find this provision: "The capital stock being $100,000, the profits of the business shall be divided into tenths, A. J. Nellis of the first part to receive six tenths, S. P. Shriver of the second part to receive three tenths and James H. Stokes of the third part to receive one tenth." This is the only agreement between the partners, as to profits. Shriver's share, therefore, "according to the terms of the articles of copartnership," is three tenths of $14,488.89, ascertained net profits of the business, or $4,346.67, and no more. Although incorporated in the articles of copartnership, the individual guaranty of Nellis to Shriver cannot be regarded as one of the terms of the copartnership agreement. It is strictly a matter between Nellis and Shriver, individually, with which the other partner, Stokes, never had nor could have any concern. The guaranty clause might be stricken out of the instrument and its integrity as articles of copartnership would be unaffected thereby.

It has also been suggested that Shriver's transfer to Mr. Nellis of the interest which he acquired by purchase at sheriff's sale was "subject to his (Shriver's) rights under the articles of association of Nellis, Shriver & Co.," and therefore Shriver has a claim on that interest, now represented by appellant, for the nominal profits guaranteed by Nellis. There would be some force in this suggestion if the Nellis guaranty were in any proper sense an integral part of the articles of association entered into by the three persons who composed the firm of Nellis, Shriver & Co. But, as we have seen, the guaranty was

a matter that concerned two of the partners only, as individuals, and not as members of the firm. It does not appear that anything was ever done to change its character from an individual transaction to that of a copartnership transaction. Shriver's claim against Nellis, individually, under the guaranty still remains in full force.

In so far, therefore, as the specifications of error involve the liability of appellant for nominal profits under the personal guaranty of Nellis, they are sustained. There is nothing in the remaining specifications that requires special notice. They are not sustained.

> Decree reversed at costs of appellee and record remitted with instructions to enter decree in accordance with the foregoing opinion.